ORIGINAL

In The United States District Court
For The Southern District of Georgia
Dublin Division

Alvin Dexter Sanford,
    Plaintiff,

v.                        CV 311-060

Sam Zanders, Captain, et al.,
    Defendants.

## Plaintiff's Second Amended Complaint

Plaintiff Alvin Dexter Sanford, Pro se litigant, for his Second Amended Complaint against defendants Toby, Boston, Deloach and Captain Sam Zanders, Alleges as Follows:

### Jurisdiction And Venue

1. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(3) and (4). The Matters in Controversy arise under 42 U.S.C. §§ 1983.

2. Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred at Telfair State Prison in McRae Georgia, which is located within

the Southern District of State.

## Parties

3. Plaintiff Alvin Dexter Sanford is and was, at all times revelant hereto, a Prisoner in the custody of Georgia Department of Corrections (G.D.C.). At the time of the events revelant hereto, Sanford was incarcerated at TelFair. Sanford is Currently incarcerated at the Augusta State Medical Prison (A.S.M.P.).

4. Defendant Sam Zanders is an officer with the rank of Captain, who at all times revelant hereto was assigned to TelFair.

5. Defendant Annetta Toby was, at all times revelant hereto, a Unit Manager of housing at TelFair.

6. Defendant Sergeant Boston, an officer with (G.D.C.) with the rank of Sergeant, who at all times revelant hereto was assigned to TelFair.

7. Defendant Patrick Deloach was, at all times revelant hereto, a Correctional Officer at TelFair.

8. Defendant Donna Palmer was, at all times revelant hereto, a acting investigator at TelFair.

9. Defendant Donald Barrow was, at all times revelant hereto, Warden at TelFair.

## Facts

10. On or about January 17, 2010, Plaintiff was assigned to and resided in Unit "A" at TelFair State Prison, when about 0115 Military time officers entered "Unit A" building informing all inmates to gather all properties and report to the gym for an emergency strip search.

11. Plaintiff a chronic ill inmate suffering with Prostate problems and urinary symptoms found the request highly irregular but complied and gathered his effects and headed to the gym with all others.

12. Upon arriving at the gym, Plaintiff and others were ordered into a fenced area to sit and wait until called into bathroom to be stripped searched.

3.

13. While waiting the swollen prostate started to effect Plaintiff with a strong urge to urinate, though it wasn't Plaintiff time to enter the bathroom, Plaintiff asked the inmate in front of him to please let me the Plaintiff go instead, the other inmate said okay.

14. The Plaintiff in excruciating pain entered bathroom and went directly to the toilet to relieve himself, while Capt. Sam Zanders and two other officers looked on and maybe two other inmates acknowledged the incident.

15. The Captain was complaining about the time and his having to get out of his bed to come to work and do this strip search. Plaintiff tried to explain to the captain that Plaintiff was suffering from, when he was interrupted.

16. And told by the Capt. Zanders that "I don't give a dam about what you're complaining about, if anyone should be complaining it should be me, getting out of my bed."

4.

17. "Inmate get out of those state clothes," Plaintiff began to strip keeping eye on the Captain while explaining to captain that he had a radio and headset in the pocket of the jacket the Captain was searching.

18. The Captain gave some reply and the Plaintiff notice he the Captain had broken the headphones, this enferiated the Plaintiff cause they were recently aquired as a gift from family.

19. The Captain's attitude was he didn't give a dam pass me those pants, Plaintiff was pulling the last leg out of the pants and almost stumbled but manage to pass the pants to the Captain.

20. The Captain took the passing of the pants Personal, though no harm was done or intended cause the Captain caught the pants.

21. But the Captain lashed out "inmate you call yourself throwing those pant at me, your behind is going to the "Hole" F-building, and called for other officers to cuff and take Plaintiff to the "Hole" F-building, when no harm was done.

5.

22. Other inmates were surprised to see Plaintiff escorted out in handcuffs, cause those that knew the Plaintiff personally knew that he avoided trouble at all cost, and they did enquire to Captain Zanders as to why was the Plaintiff taken to the "Hole".

23. Plaintiff was taken to the "Hole" by two officers Sgt. Boston and officer John Doe, Plaintiff spoked with officers as they walked, Plaintiff explained he had did no harm, Sgt. Boston said the Captain probably would be releasing the Plaintiff the next day.

24. Plaintiff on January 17, 2010 at about 2:00 A.M. late night arrived at F-building (the Hole) cell assigned F1-133 T, and shared cell with inmate Alvin Lanier.

25. Alvin Lanier and Plaintiff got along good for a while until Alvin Lanier was released back into general population.

26. The next inmate to occupy the cell F1-133 T, was James Penson #631706, James Penson was a returned inmate that had had a violent episode with some Mexicans whom he explained to Plaintiff he hated.

6.

27. And he was sent to Augusta State Medical Prison (A.S.M.P.) for observation, and was now returned. James Penson was loud and obnoxious, screaming out of the window to communicate with his friend alias "Spider."

28. Penson for days complained to unit Manager Annetta Toby, and counselor "Wilcox" and also used the grievance procedure to complain about his housing assignment; He didn't want to share a cell with none other than his own kind.

29. On about January 25, 2010 - February 2, 2010, James Penson complained to Sgt. Boston about his need to be isolated before he hurt somebody.

30. Sgt. Boston, Annetta Toby, Patrick Deloach et al denied James Penson's request to be isolated, leaving Plaintiff in an unsafe condition.

31. On date of February 3, 2010, the Plaintiff and James Penson was escorted to the showers. Plaintiff finish showering first and was being escorted back to the cell, when he saw an opportunity to talk with Officer Patrick Deloach about "Penson's" irrational behavior and fear of what he might do.

7.

32. Officer Patrick Deloach assured Plaintiff that he would "see what he could do" the officer failed to secure the safety of the Plaintiff upon being warned leaving Plaintiff in a unsafe condition.

33. When James Penson arrived at the cell F1-133T after showering and had seen Plaintiff and the ofc. Patrick Deloach talking James Penson seem angered.

34. So Plaintiff explained to James Penson what the conversation was about. Plaintiff told Penson "I talked to ofc. Patrick Deloach about the request you have been making to be put in isolation and that "I thought" it was a good idea.

35. Penson said nothing and attacked Plaintiff without provacation, Plaintiff struggled with the cellmate cause Plaintiff was weak from urinary symptoms and prostatitus.

36. After minutes of struggling Plaintiff was able to subdue his attacker and press buzzer for emergency help. With James Penson in a subdued position, Plaintiff notice blood but didnt know who's it was.

8.

37. Plaintiff also discovered James Penson was in possession of a razor. Soon Sgt. Boston appeared at the door port hold when Plaintiff yelled "he has a razor."

38. Sgt. Boston did not immediately open door and assist in stopping the attack of the razor weilding inmate James Penson. Sgt. Boston failed to intervine and stop an attack when he was warned that the inmate posessed a razor.

39. The Plaintiff suffered more cuts and bruises because Sgt. Boston didn't enter into cell and stop the attacker James Penson who Plaintiff struggled to keep subdued.

40. From outside of the door Sgt. Boston instructed Plaintiff to stop and step to the door to be handcuffed, when do so James Penson flushed the razor down the toilet. The "Cert team" arrives and the cell door is open, James Penson is escorted out first.

41. Plaintiff is now at the back of the cell, when called to exit Plaintiff glances into mirror and discover he has been severely cut by James Penson, Sgt. Boston, Annetta Toby, and Patrick Deloach, et al all had fore warned by James Penson of his request to be isolated, but ignored the matter leaving Plaintiff in an "excessive risk to health and safety."

42. Plaintiff who also suffers from mental illnesses was in a state of shock from the sight of his blood and the close cut to his jugular vein and heart. Plaintiff was taken to Telfair Prison Clinic where Capt. Sam Zanders witness and saw the cuts and injury the Plaintiff had suffered.

43. The Plaintiff was taken into a room where he was stitched by Dr. Cheney and asisted by several Nurses the Doctor commented on parts of the inner throat he said to Nurses "thats the Clava chord" The Plaintiff wound was more than de minimis.

44. The Warden came into the room where Plaintiff was being stitched, and asked "who did this" and left the room. The Warden saw a wrong and failed to make right the wrong.

45. When the warden saw the horrific cuts to Plaintiff's neck and other places there was a causal connection between the warden's conduct and the alleged violations.

46. Despite the severity of Plaintiff's injuries the Plaintiff was asked to retrieved a shirt and attend a hearing, where he was suppose to be released back into general population on date of 02-03-10, Plaintiff attended a hearing right after being assaulted and severely cut and posed no threat to safety of anyone.

47. On or about 02-04-10 Plaintiff was asked by officer John Doe to gather his belongings to be moved to isolation, Plaintiff followed instructions but found it highly improper.

48. Plaintiff's new cell assignment was F2-420, on 02-17-10 after awakening from sleep Plaintiff notice a piece of paper had been slid under the door. Plaintiff retrieved the paper and it read "Disciplinary Report Work Sheet."

49. The "Investigative report" signed by COII Donna Palmer, states "Based upon My Investigation I recommend this case be heard" When Ms. Palmer signed the "disciplinary Report Work Sheet" she acted "under Color of law" cause she never investigated the Plaintiff.

50. Ms Palmer acted as in concert with the bias and partial hearing officer Capt. Sam Zanders. Who together have created a hazard and arbitrary decision making... violative of Due Process.

51. As the Plaintiff read the Disciplinary Report Work Sheet, Plaintiff Knew No investigation had been done on the Plaintiff, No reason was given of the disciplinary findings against him, and Patrick Deloach was Not the actual reporting official of the "Factual Statement, in Violation of Substantive Due Process rights.

52. And that an official that had direct personal involvement with the accused signed the document as the "Disciplinary Hearing officer and had a check mark on section D, stating "Inmate advised of his/her right to appeal," which is untrue and under Color of law.

12.

53. Plaintiff was never advised on appeal cause Plaintiff was denied the right to attend the Disciplinary Hearing proceedings to call witness and question officers and cross-examine witnesses and Capt. Sam Zanders et al violated Plaintiff Substantive due Process rights to be treated with "Fundamental Fairness."

54. And Plaintiff could not have been a threat to safety cause Plaintiff attended a hearing the same day he was attacked. Capt. Sam Zanders had made statement to other inmates on date of 01-17-10 that he would keep Plaintiff in the (Hole) F-building until July.

55. The Captain on date of 02-17-10 saw his chance to make good his promise to inmates that he would keep Plaintiff in the (Hole) for six months, when he chaired the Disciplinary Proceedings in violation of Substantive Due Process.

56. State standards of procedure says the Capt. was supposed to alternate his term because of direct involvement with the accused, Federal law says Plaintiff have a right to have an impartial hearing officer to preside over Disciplinary Proceedings.

13.

Plaintiff cannot conclude that he had a full and fair opportunity to litigate the issue.

5. These acts represents a pattern of bogus charges and abuse of authority by Capt Sam Zanders et al against Plaintiff which cause Plaintiff physical damages and mental anguish as a result.

Wherefore, Alvin Dexter Sanford, prays for judgment in his favor and damages in his favor against all defendants in an amount sufficient to compensate him for the pain and mental anguish suffered by him due to the <u>failure to Protect/ Deliberate indifference to Health and Safety</u>.

And intentional misconduct of defendants mishandling of <u>Due Process in Disciplinary Proceedings</u>, but in no event less than $50,000, together with filing fees and cost, and such additional relief as the court may deem just and proper.

Respectfully Submitted

*Alvin Dexter Sanford*

01-09-12

Alvin Dexter Sanford,
Plaintiff

14.



A/W Dexter Sanford - 880759 23 B-2
Mgr. M. Tore McCall...n
500 Gordon Hwy.
Grovetown, Ga. 30813

AUGUSTA, GA 309
PM 11 JAN 2012

PM 11 JAN 2012

Clerk, U.S. District Court
Post Office Box 1130
Augusta, Georgia  30903