FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUL 26 P 1:22
CLERK _____
S.D. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ALVIN DEXTER SANFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-060 |
| | ) | |
| ANNETTA TOBY, Unit Manager, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at Telfair State Prison ("TSP") in Helena, Georgia. (See doc. no. 22, p. 2.) Plaintiff is proceeding *pro se* and *in forma pauperis*, and before the Court is Defendants' motion for summary judgment. (Doc. no. 59.) For the reasons set forth below, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, (doc. no. 59), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

## I. FACTS

Plaintiff, who is serving a life sentence for murder, was housed in the disciplinary segregation unit at TSP in cell F-1-133 from January 17, 2010, through February 3, 2010.[1]

---

[1] Disregarding the Court's prior instructions, (doc. no. 11, p. 7), Plaintiff often fails to cite any evidence in support of his assertions or only provides citations to his unsworn amended complaint when responding to Defendants' motion and statement of material facts. (See generally doc. nos. 75, 76.) Where Plaintiff has failed to properly dispute a material fact in Defendants' statement, the Court has deemed that fact undisputed. See Fed. R. Civ. P. 56(e); Williams v. Slack, 438 F. App'x 848, 849 (11th Cir. 2011) (*per curiam*).

(Doc. no. 59, Ex. A. ("Sanford Depo."), p. 17, lines 2-8; Ex. B ("Deloach Aff."), ¶¶ 9-10; Ex. B-2, p. 2.) During that time, Defendant Everett Boston was employed by the Georgia Department of Corrections ("GDOC") as a Sergeant at TSP, (Doc. no. 59, Ex. D ("Boston Aff."), ¶ 3), Defendant Patrick Deloach was employed as a Correctional Officer there, (Deloach Aff. ¶ 3), and Defendant Toby was employed as a Unit Manager, (doc. no. 59, Ex. E ("Toby Aff."), ¶ 3).

For approximately nine days, from January 26, 2010, through February 3, 2010, Plaintiff was cellmates with James Penson ("Inmate Penson"), who is serving time for obstruction of a law enforcement officer, violation of motor vehicle laws, and possession of drugs. (Deloach Aff. ¶ 26; doc. no. 59, Ex. B-2, p. 2; Ex. B-3, p. 1; Ex. B-4, pp. 3-4.) Inmate Penson was a "known troublemaker and violent person" who "had been into fights," and he told Plaintiff that "he hated Mexicans" and "that he believed that people of their own kind should pretty much be intertwined with people of their own kind," though he "meant for it not to be personal" between Plaintiff and him. (Sanford Dep., pp. 44, lines 22-25; 45, lines 19-25; 46, lines 1-15.)

On February 2, 2010, Inmate Penson advised Plaintiff that he was going to attempt to get transferred to a unit where his friend was located. (Penson Aff. ¶¶ 6-7, 9.) Plaintiff attests that he was not advised of a specific plan, but that he "listen[ed] to [Inmate Penson's] psychotic talk." (Doc. no. 76-3, p. 6.) Inmate Penson told Plaintiff about "scenarios that he would use to try and get separated and . . . get put in another cell or either isolation," including telling Plaintiff that another inmate named "Spider" was going to "nick" his own cellmate on the neck to get them separated. (Sanford Dep., pp. 51, lines 10-14; 52, lines 6-25; 53, lines 1-12.)

Still, Plaintiff did not speak to Defendants or any counselor at TSP about moving or separating from Inmate Penson prior to February 3, 2010, (Sanford Dep., pp. 53, lines 18-25; 54, lines 1-25; 55, line 1), and he did not at any time indicate to Defendant Toby that he was unsatisfied with his cellmate or wished to be transferred to a different cell, (Toby Aff. ¶ 28).[2] Rather, Plaintiff and Inmate Penson "appeared to get along well" to Defendants before their altercation on February 3, 2010. (Deloach Aff. ¶ 29; Boston Aff. ¶ 29; Toby Aff. ¶ 29.)

Turning to the events of February 3, 2010, while Plaintiff was being escorted from the shower that day, he informed Defendant Deloach that Inmate Penson's behavior was "erratic":

> I was trying to explain to him that my cellmate has been acting, you know, improper, you know, I'm getting this bad vibe and fear, he's getting to be a bother, a, you know, a nerve problem. He's kind of like scaring me, you know, from his behavior. [Defendant Deloach] kind of got the message, because I told him also he's been asking about a cell change, and it's, you know, it's a good idea for y'all to do it.

(Sanford Dep., pp. 50, lines 18-25; 51, line 1.) Plaintiff recalls Defendant Deloach responding, "I'll do what I can do." (Id. at 57, lines 17-18.) Plaintiff attests that he was "prompted" to talk to Defendant Deloach by Inmate Penson's "psychotic talk," and that he "expected to be separated from the cellmate [Inmate Penson] then and there," after his conversation with Defendant Deloach. (Doc. no. 76-3, pp. 4, 6.)

---

[2]Plaintiff did not complete a move request form while he was housed in F-1. (Sanford Dep., p. 55, lines 2-5; Deloach Aff. ¶ 24.) Inmates receive instruction upon their initial transfer to TSP of the proper procedure for requesting changes in housing assignments, and this procedure is also outlined in TSP's "State Prisoner Handbook." (Deloach Aff. ¶¶ 18, 20; doc. no. 59, Ex. B-5.) Plaintiff asserts, however, that "[t]he inmates housed in F-building do not have access to proper procedure for requesting changes in housing assignment." (Doc. no. 76, p. 3 (citing doc. no. 76, Ex. C-2).) Nor did Plaintiff make a verbal or written request for protective custody while he was housed in F-1, (Sanford Dep., p. 55, lines 6-10; Deloach Aff. ¶ 25), the procedure for which is outlined in the GDOC Standard Operating Procedures ("SOP") IIB09-0001. (Deloach Aff. ¶ 22; doc. no. 59, Ex. B-7). Plaintiff attests that he did not know about protective custody. (Sanford Dep., p. 55, lines 9-10.)

3

Defendant Deloach confirms being informed by Plaintiff on February 3, 2010, that he and Inmate Penson were "not getting along." (Deloach Aff. ¶ 30.) According to Defendant Deloach, however, Plaintiff did not indicate that his request was urgent, that he felt unsafe in any manner, or that he feared Inmate Penson, and Defendant Deloach did not perceive that Plaintiff felt threatened or in any danger when he made the request. (Id. ¶¶ 32-33.) Defendant Deloach informed Plaintiff he would notify his supervisor. (Id. ¶ 31.)

On the same date, Inmate Penson verbally informed Defendants Deloach and Boston, and another unnamed officer, that he desired a cell transfer because he and Plaintiff "were not getting along." (Penson Aff. ¶ 10.) Specifically, Inmate Penson inquired with Defendant Deloach about changing his room assignment that day during a shower escort, and while Defendant Boston was making the rounds that day, Inmate Penson told him he "did not like roommates" and wished to move to unit F-2 isolation. (Deloach Aff. ¶ 35; Boston Aff. ¶ 30.) Inmate Penson had not at any other time expressed a desire to transfer other than to Defendants Deloach and Boston on February 3, 2010. (Penson Aff. ¶ 11.) Inmate Penson at no point made a request to transfer to either Defendant Toby or a counselor. (Penson Aff. ¶ 14; Toby Aff. ¶ 28.) Inmate Penson also did not at any time indicate to any individual a fear that he and Plaintiff would get into an altercation, nor did he threaten violence. (Penson Aff. ¶¶ 12-13.) Finally, Inmate Penson failed to indicate that the transfer was needed on an urgent or emergency basis or that he felt threatened or unsafe. (Penson Aff. ¶ 13; Boston Aff. ¶ 32; Deloach Aff. ¶ 37.) Defendants Boston and Deloach did not perceive that Inmate Penson felt threatened or in danger. (Boston Aff. ¶ 33; Deloach Aff. ¶ 38.)

After they had both been escorted back from the shower and placed into their cell, a fight occurred when Plaintiff informed Inmate Penson that he had inquired of Defendant

4

Deloach whether Inmate Penson could be moved from the cell. (Sanford Dep., pp. 57, lines 20-25; 58, lines 1-25; 59, lines 1-19.) Plaintiff and Inmate Penson each attest that the other started the fight. (Sanford Dep., pp. 59, lines 20-25; 60, lines 1-24; Penson Aff. ¶¶ 17-19.)

Defendant Deloach heard a loud knock coming from cell F-1-133 very shortly after Inmate Penson was returned to his cell from the shower, and when he went to the door of the cell, he observed what appeared to be Plaintiff holding Inmate Penson down, and he immediately called for assistance over the radio. (Deloach Aff. ¶¶ 39-41; Boston Aff. ¶ 35.) Defendant Boston arrived on scene within a few seconds and, after looking through the flap of the cell door and seeing the fight, he instructed Plaintiff and Inmate Penson to cease fighting, separate, and cuff up.[3] (Deloach Aff. ¶ 42; Boston Aff. ¶ 37.) Plaintiff and Inmate Penson continued to struggle despite the order. (Deloach Aff. ¶ 43; Boston Aff. ¶ 39.) Other correctional officers arrived on scene, and as they prepared to enter the cell, Plaintiff yelled "he's got a razor." (Deloach Aff. ¶¶ 44-45; Boston Aff. ¶¶ 40-41.) Defendant Boston ordered one of the officers present to get a shield and continued to order Plaintiff and Inmate Penson to separate. (Deloach Aff. ¶¶ 46-47; Boston Aff. ¶¶ 42-43.) After multiple instructions, Plaintiff and Inmate Penson separated. (Deloach Aff. ¶ 48; Boston Aff. ¶ 44.) At this time, the officers on scene observed that Plaintiff and Inmate Penson had sustained injuries, and they

---

[3] Plaintiff submitted a "Declaration" in response to Defendants' motion, in which he states that "the altercation between [Plaintiff] and [Inmate] Penson was over with when the door was opened. So the officers submitting affidavits that they saw or witness[ed] the altercation are lying." (Doc. no. 76-3, p. 3.) Neither Defendant Deloach nor Defendant Boston attested that they opened the door of the cell to witness the altercation, however, and Defendant Boston specifically attested that he looked through the flap of the cell door. (See Deloach Aff. ¶¶ 39-41; Boston Aff. ¶¶ 35, 37.) Accordingly, the Court sees no inconsistency between Plaintiff's version of the events and that of Defendants Deloach and Boston, and it rejects Plaintiff's bald assertion that Defendants are "lying."

5

were escorted to medical for treatment. (Deloach Aff. ¶¶ 49-50; Boston Aff. ¶¶ 45-46.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial

is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. As noted above, the non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Merits of Plaintiff's Claims

Plaintiff advances two theories of liability. First, as to all Defendants – Toby, Boston, and Deloach – Plaintiff contends that they were deliberately indifferent to his safety by failing to reassign cellmates to protect him from the risk of assault by Inmate Penson while he was housed in cell F-1-133 in segregation at TSP. (See doc. no. 22, pp. 6-10, 14; doc. no. 75, pp. 22-25; doc. no. 82, pp. 7-13.) Second, Plaintiff contends that Defendants Boston and Deloach were deliberately indifferent to his safety by failing to intervene more quickly in the fight between Plaintiff and Inmate Penson. (See id.) Defendants argue that (1) Plaintiff has failed to offer sufficient evidence in support of his claims of deliberate indifference; (2) they are entitled to qualified immunity; and, (3) Plaintiff's claims for money damages are barred against Defendants in their official capacities. (See doc. no. 59-13, pp. 8-9, 15-18, 19-20.) As

7

explained in detail below, the undisputed facts show that Plaintiff cannot satisfy the elements of a deliberate indifference claim for failure to protect or failure to intervene.

> **1. Plaintiff Has No Viable Failure to Protect Claim Because Defendants Were Not Subjectively Aware of a Substantial Risk of Serious Harm**

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation marks omitted); see also Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*) ("Prisoners have a constitutional right to be protected from violence while in custody."). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Rather, "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*). To prove that prison officials were deliberately indifferent, the plaintiff must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman v. Kimbrough, -F.3d-, No. 12-10732, 2013 WL 3109280, at *3 (11th Cir. June 21, 2013); see also Marsh, 268 F.3d at 1028 ("An Eighth Amendment violation will occur when a substantial risk of harm, of which the official is subjectively aware, exists and the official does not 'respond[ ] reasonably to the risk.'") (quoting Farmer, 511 U.S at 844).

Before a prison official's failure to act can constitute deliberate indifference, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). To that end, "there must be much more than mere awareness of [an inmate's] generally problematic nature" before prison

8

officials will be considered to have the sufficient level of culpability. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (prison officials not on notice of substantial risk of serious harm despite knowing cellmate was a "'problem inmate' with a well-documented history of prison disobedience and had been prone to violence"); see also Chatham v. Adcock, 334 F. App'x 281, 293 (11th Cir. 2009) (*per curiam*) (prison officials' mere awareness that plaintiff's cellmate was belligerent toward white inmates, was verbally abusive, and had "violent tendencies" not enough to satisfy subjective awareness requirement). Rather, with respect to a potential assault by another inmate, the prison-official defendants must be aware of a "particularized threat or fear felt" by the inmate in order to be subjectively aware of a substantial risk of harm. Carter, 352 F.3d at 1350; see also Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 618 (11th Cir. 2007) (issue of fact about whether assistant warden had subjective awareness when inmate told him twice "that his life had been threatened by members of his former gang and that, to avoid injury, he needed either to be transferred to another prison or to be placed in protective custody," and inmate submitted a "Request" form asserting that he feared for his safety and requesting a transfer).

With these principles in mind, and drawing all justifiable inferences in Plaintiff's favor based on the evidence in the record, the Court finds that Plaintiff has failed to establish a genuine issue of material fact regarding whether Defendants had subjective awareness of a substantial risk of serious harm before his assault on February 3, 2010.

Plaintiff asserts that Defendant Toby is liable for failing to protect him because he was in her custody and because she was responsible for his housing assignment to the F-building. (Doc. no. 75, pp. 5, 27-28.) Plaintiff has adduced no evidence that any particular threat or concern was communicated to Defendant Toby, however. Indeed, Plaintiff and Inmate Penson

9

"appeared to get along well" to Defendant Toby before their altercation on February 3, 2010, and Plaintiff at no point indicated to Defendant Toby that he was unsatisfied with his cellmate or wished to be transferred to a different cell. (Toby Aff. ¶¶ 28-29.) Similarly, contrary to the unsubstantiated allegations in Plaintiff's amended complaint, Inmate Penson never submitted a request to transfer to either Defendant Toby or a counselor.[4] (Penson Aff. ¶ 14; Toby Aff. ¶ 28.) Indeed, Inmate Penson did not at any time indicate to any individual that he feared he and Plaintiff would get into an altercation, nor did he threaten violence. (Penson Aff. ¶¶ 12-13.) At most, then, Defendant Toby was aware that Inmate Penson was a problematic inmate, which is clearly insufficient to establish any subjective awareness on her part of a substantial risk of serious harm in allowing Inmate Penson and Plaintiff to remain cellmates. See Carter, 352 F.3d at 1349.

Plaintiff also asserts that the statements he and Inmate Penson made to Defendants Deloach and Boston on February 3, 2010, before the altercation, were sufficient to make those Defendants subjectively aware of the requisite substantial risk. (Doc. no. 82, p. 12.) Specifically, Plaintiff had a brief discussion with Defendant Deloach that day about Inmate

---

[4]Plaintiff alleged in his amended complaint that Defendant Toby was liable for failing to protect Plaintiff because Inmate Penson used the grievance procedure to complain to her that he "didn't want to share a cell with none other than his own kind." (Doc. no. 22, p. 7.) Plaintiff has not offered any evidence or further argument to this effect in his briefing in response to Defendants' motion for summary judgment. (See generally doc. nos. 75, 76, 82.) In any event, the Court notes that even if Inmate Penson did express that he did not want to be in a cell with someone of a different race, that would not be enough to signal a high likelihood of violence to Defendant Toby sufficient to create subjective awareness on her part. See Carter, 352 F.3d at 1349-50; see also Brown, 894 F.3d at 1537 (prison official's awareness that there was a "racial problem" in the cell was not enough to show he was or should have been aware of a strong likelihood the prisoner plaintiff would be assaulted; the plaintiff "did not say he had been threatened, or that a fight was imminent, or that he feared an attack, nor [was] there evidence that racial tensions in the jail frequently resulted in violence.").

10

Penson: that his behavior was "erratic," that Plaintiff was getting a "bad vibe and fear," that he was "getting to be a bother," that he was "kind of like scaring [Plaintiff]," and that it would be a "good idea" to give Inmate Penson a cell change. (Sanford Dep., pp. 50, lines 18-25; 51, line 1.) Inmate Penson, meanwhile, communicated to Defendants Deloach and Boston that day that he and Plaintiff "were not getting along" and that he "did not like roommates." (Penson Aff. ¶ 10; Deloach Aff. ¶ 35; Boston Aff. ¶ 30.)

Crucially, however, neither Plaintiff nor Inmate Penson communicated any "*particularized* threat or fear [either] felt" to Defendants Deloach or Boston. Carter, 352 F.3d at 1350 (emphasis added). Instead, Plaintiff made one markedly vague communication to Defendant Deloach, devoid of any details, that Inmate Penson was behaving strangely and that Plaintiff had *generalized* feelings of discomfort and fear, which is insufficient to make a prison official subjectively aware of a substantial risk of serious harm. See id. at 1349-50 (no subjective awareness even where officials knew that "problem inmate" had been "acting crazy," roaming his cell like a "caged animal," and had informed the plaintiff that he intended to fake a hanging). Inmate Penson, meanwhile, never threatened violence or expressed fear of an altercation with Plaintiff. (Penson Aff. ¶¶ 12-13.) In the absence of any threats or indication that the situation was about to boil over into violence, Inmate Penson's indications that the cellmates were not getting along were not enough to make Defendants Deloach and Boston subjectively aware of a substantial risk of serious harm. See Carter, 352 F.3d at 1349-50; Brown, 894 F.2d at 1537.

Moreover, neither Plaintiff nor Inmate Penson indicated that moving Inmate Penson was necessary, let alone urgent. Plaintiff only made the tentative suggestion to Defendant Deloach that it was a "good idea" to move Inmate Penson to a different cell, and neither

11

Plaintiff nor Inmate Penson pressed the issue with either Defendants Deloach or Boston or signaled to them that the situation presented a substantial risk of serious harm.[5] See Brown, 894 F.2d at 1537; cf. Rodriguez, 508 F.3d at 618 (prisoner plaintiff informed official on multiple occasions that he "needed" to be transferred to another prison or to be placed in protective custody in order to avoid risk of harm).

Finally, as noted earlier with respect to Defendant Toby, that Inmate Penson exhibited racial animosity and "was a known troublemaker and violent person" who "had been into fights" is likewise insufficient to establish any subjective awareness on the part of Defendants of a substantial risk of serious harm, even if they were aware of Inmate Penson's issues in this regard. See Carter, 352 F.3d at 1349-50; Chatham, 334 F. App'x at 293.

For all of these reasons, the Court recommends that Defendants' motion for summary

---

[5] Plaintiff submitted a declaration accompanying his response to Defendants' motion for summary judgment in which he attests that he "prewarned [Defendant] Deloach that James Penson have been acting irrational and I fear what might happen." (Doc. no. 76-3, p. 4.) In his response to Defendants' motion, Plaintiff also asserts that, during his conversation with Defendant Deloach, his "expression was of fear of a fight." (Doc. no. 75, p. 10.) Yet Plaintiff gave no such testimony during his deposition, despite being repeatedly asked what he told Defendant Deloach about Inmate Penson. (See Sanford Dep., pp. 50, lines 7-25; 51, line 1.) Accordingly, the Court disregards Plaintiff's belated attempts to contradict his deposition testimony after having the benefit of Defendants' briefing in support of their motion for summary judgment, particularly as Plaintiff has offered no explanation for why he has now offered a different account of what he told Defendant Deloach. See Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

Notably, however, even if Plaintiff told Defendant Deloach vaguely that he "fear[ed] what might happen" or if he had an "*expression* of fear of a fight" while he was talking to Defendant Deloach, he still failed to clearly express that a threat had been made, that he had a *particularized* fear, or that the situation was at all urgent, and he thus still falls short of presenting evidence that Defendant Deloach was subjectively aware of a substantial risk of serious harm. See Carter, 352 F.3d at 1349-50; Brown, 894 F.2d at 1537.

judgement be granted on Plaintiff's claim for failure to take action before the fight because the undisputed facts show that Defendants were not subjectively aware of a substantial risk of serious harm.

### 2. Plaintiff Has No Viable Failure to Intervene Claim Because Defendants Were Not Required to Intervene and Place Themselves in Danger of Physical Harm

Plaintiff also asserts that Defendants Deloach and Boston are liable for failing to "intervene in the cell" during the fight between Plaintiff and Inmate Penson, causing Plaintiff additional injuries. (See doc. no. 22, pp. 9-10; doc. no. 75, p. 6.) A prison official can be liable under the Eighth Amendment for failing to take reasonable steps to protect the victim of an ongoing assault by another inmate. See Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (*per curiam*) (citing Skritch v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)); see also Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (*per curiam*) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault). Still, "[r]egardless of the presence or absence of a weapon in the hands of the attacking inmates, 'no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence.'" Seals v. Marcus, 1:11-CV-99 WLS, 2013 WL 656873, at *8 (M.D. Ga. Jan. 25, 2013) (quoting Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006)), *adopted by* 2013 WL 663579 (M.D. Ga. Feb. 22, 2013); see also Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995) ("[P]rison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm."); Winfield v. Bass, 106 F.3d 525, 532 (4th Cir. 1997) ("[A]ll of the authority of which we are aware leads to the conclusion that such heroic measures are not constitutionally required.").

The undisputed facts show that Defendants Deloach and Boston responded reasonably to the ongoing altercation and did not act with deliberate indifference to Plaintiff's safety. When Defendant Deloach reported to the cell and saw Plaintiff and Inmate Penson engaged in an altercation, he immediately called for assistance over the radio. (Deloach Aff. ¶¶ 39-41; Boston Aff. ¶ 35.) Defendant Boston then arrived on scene and saw the altercation, and he began instructing Plaintiff and Inmate Penson to cease fighting, separate, and cuff up, but they continued to struggle. (Deloach Aff. ¶¶ 42, 43; Boston Aff. ¶¶ 37, 39.) Defendant Boston and other officers who had arrived prepared to enter the cell, but Plaintiff yelled "he's got a razor." (Deloach Aff. ¶¶ 44-45; Boston Aff. ¶¶ 40-41.) Accordingly, Defendant Boston ordered one of the officers present to get a shield and continued to order Plaintiff and Inmate Penson to separate. (Deloach Aff. ¶¶ 46-47; Boston Aff. ¶¶ 42-43.) After multiple instructions, Plaintiff and Inmate Penson separated. (Deloach Aff. ¶ 48; Boston Aff. ¶ 44.)

The undisputed facts are that once Defendant Deloach saw the altercation, he called for assistance, and once Defendant Boston and other officers arrived, Plaintiff yelled "he's got a razor." Alerted to the fact that one of the inmates was armed with a dangerous weapon, it was reasonable for purposes of the Eighth Amendment for Defendant Boston to continue verbally ordering the inmates to separate until a shield could be obtained. Contrary to Plaintiff's assertion, Defendants Boston and Deloach were not constitutionally required to intervene without protection and risk being seriously harmed themselves. See Seals, 2013 WL 656873, at *8; Prosser, 70 F.3d at 1008; see also Patmon v. Parker, 3 F. App'x 337, 338-39 (6th Cir. 2001) (where undisputed facts showed that prison officials reported immediately to the scene of an ongoing assault with a knife and verbally ordered the armed inmate to disarm himself, and then removed the plaintiff and the inmate from the scene after the armed inmate dropped

his weapon, their response was reasonable as a matter of law under Farmer); MacKay v. Farnsworth, 48 F.3d 491, 493 (10th Cir. 1995) (during ongoing assault in which one inmate was armed with a shank, guards' attempt to break it up with verbal commands was reasonable while they waited for additional staff and medical personnel to arrive on scene). Accordingly, Defendants' motion for summary judgment should be granted with respect to this claim as well.

In sum, Plaintiff has failed to demonstrate a genuine dispute as to a material fact concerning his claims that Defendants acted with deliberate indifference to his safety, and Defendants' motion for summary judgment should be granted.[6]

### C. Plaintiff's Medication Claim Is Not Before the Court

The parties extensively briefed the merits of an issue that is not a part of this case: Plaintiff's allegations that Defendants were deliberately indifferent to his serious medical needs by failing to provide him medication while he was in the segregation unit at TSP. Plaintiff's amended complaint contains no allegations concerning this claim. (See generally doc. no. 22.) After the Court screened Plaintiff's amended complaint and recommended dismissal of several claims and defendants, (see doc. no. 29), Plaintiff filed objections in which he attempted to supplement his amended complaint with a host of new allegations, including allegations that he was not provided medication, (see doc. no. 31, pp. 4, 5-9, 11). United States District Judge Dudley H. Bowen, Jr., concluded that the Court would not consider the new factual allegations set forth in Plaintiff's objections. (See doc. no. 32, pp. 1-2.) The only claims still at issue in

---

[6]In light of the Court's conclusion that Defendants are entitled to summary judgment for the reasons set forth above, it is unnecessary to address the merits of Defendants' arguments regarding qualified immunity and Plaintiff's claims against Defendants in their official capacities.

this case after the Court's screening, then, were that Defendants were deliberately indifferent to Plaintiff's safety with regard to the physical altercation he had with Inmate Penson on February 3, 2010. Thus, while the Court appreciates the effort of the parties in briefing other issues, it was unnecessary to address those issues for purposes of resolving Defendants' motion for summary judgment.

### III. CONCLUSION

The Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 59), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 26th day of July, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE